1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10   JODI ST. LOUIS,

11                     Plaintiff,                    CASE NO. 3:16-CV-05128-DWC

12        v.                                          ORDER ON PLAINTIFF'S
                                                     COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
14
                      Defendant.
15

16        Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

17   denial of Plaintiff's applications for Disability Insurance Benefits ("DIB"), Supplemental

18   Security Income ("SSI") benefits, and Disabled Widow's Benefits ("DWB"). The parties have

19   consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R.

20   Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

21   United States Magistrate Judge, Dkt. 6.

22        After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

23   erred by failing to properly evaluate the opinions of one of Plaintiff's treating physicians and one

24

1   examining physician. Therefore, this matter is reversed and remanded, pursuant to sentence four

2   of 42 U.S.C. § 405(g), for further proceedings.

3   **PROCEDURAL& FACTUAL HISTORY**

4   On October 15, 2012, Plaintiff filed applications for DIB, SSI, and DWB. *See* Dkt. 9,

5   Administrative Record ("AR") 247-68. Plaintiff alleges she became disabled on September 1,

6   2008, due to macular degeneration, lumbar degenerative disc disease, back pain, and thyroid

7   issues. *See* AR 247, 283.  Plaintiff's applications were denied upon initial administrative review

8   and on reconsideration. *See* AR 174-76, 179-86, 189-195. A hearing was held before an ALJ on

9   April 15, 2014, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 47.

10   On May 13, 2014, the ALJ found Plaintiff was not disabled within the meaning of

11   Sections 202(e), 216(i), 223(d), and1614(a)(3)(A) of the Social Security Act. AR 37-38.

12   Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on

13   October 16, 2015, making that decision the final decision of the Commissioner of Social Security

14   (the "Commissioner"). *See* AR 5, 20 C.F.R. § 404.981, § 416.1481. After receiving an extension

15   of time to file a civil action from the appeals council, Plaintiff filed a complaint in this Court

16   seeking judicial review of the Commissioner's final decision on February 19, 2016. AR 1.

17   Plaintiff argues the denial of benefits should be reversed and remanded for further

18   proceedings, because the ALJ: 1) failed to find Plaintiff's depression and macular degeneration

19   to be severe impairments at Step Two of the sequential evaluation; 2) improperly evaluated the

20   medical opinion evidence from six treating, examining, and non-examining physicians; 3)

21   improperly discounted Plaintiff's subjective symptom testimony; 4) failed to include all of

22   Plaintiff's limitations in the residual functional capacity ("RFC") finding, and 5) improperly

23

24

1  found Plaintiff was capable of performing jobs existing in significant numbers in the national

2  economy at Step Five. Dkt. 13, p. 1.

3  **STANDARD OF REVIEW**

4      Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

5  security benefits only if the ALJ's findings are based on legal error or not supported by

6  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

7  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

8  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

10 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

11 **DISCUSSION**

12 I.    <u>Whether the ALJ Erred by Failing to Consider Plaintiff's Depression and Macular Degeneration to be Severe Impairments at Step Two of the Sequential Evaluation.</u>

13 **A.  Standard**

14     At Step Two of the sequential evaluation, the ALJ must determine if a claimant has a

15 "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii),

16 416.920(a)(4)(ii) (2015). *See also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996)

17 (internal citation omitted). Impairments must result "from anatomical, physiological, or

18 psychological abnormalities which can be shown by medically acceptable clinical and laboratory

19 diagnostic techniques." 20 C.F.R. § 416.908 (2010). A medically determinable impairment is

20 considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic

21 work activities . . . ." 20 C.F.R. §§ 404.1520(a)(4)(iii) & (c), 416.920(a)(4)(iii) & (c); *see also*

22 Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those

23 "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing,

24

1    sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and

2    speaking; understanding, carrying out, and remembering simple instructions; use of judgment;

3    responding appropriately to supervision, co-workers and usual work situations; and dealing with

4    changes in a routine work setting." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985

5    WL 56856 *3.

6         The Step Two inquiry, however, is merely a threshold determination as to whether a

7    claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076

8    (9th Cir. 2007). *See also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting the Step

9    Two determination is a *de minimis* screening device used to dispose of groundless claims).

10   "Ample authority cautions against a determination of nondisability at step two." *Ortiz v.*

11   *Commissioner of Social Sec.*, 425 Fed.Appx. 653, 655 (9th Cir. 2011) (*citing Bowen v. Yuckert*,

12   482 U.S. 137, 153 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005), *Smolen*, 80 F.3d

13   at 1290. An impairment or combination of impairments may be found "not severe only if the

14   evidence establishes a slight abnormality that has no more than a minimal effect on an

15   individual's ability to work." *Smolen*, 80 F.3d at 1290.

16        Here, the record contains evidence suggesting Plaintiff had the medically determinable

17   impairments of macular degeneration and depression, which the ALJ found to be not severe at

18   Step Two of the sequential evaluation. However, even assuming the ALJ erred by finding these

19   impairments to be not severe,[1] any error is harmless.

20

21 _____

22        [1] It is not at all clear the ALJ erred in assessing these medically determinable
impairments. The ALJ provided a thorough review of the medical evidence to demonstrate

23   Plaintiff's macular degeneration caused no more than a minimal effect on Plaintiff's ability to
work, and that Plaintiff's depression did not last for a continuous period of twelve months. AR

24   22.

1  An error is harmless if "there remains substantial evidence supporting the ALJ's decision

2  and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*,

3  674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d

4  1190, 1197 (9th Cir. 2004)). Thus, if a claimant prevails at Step Two and the ALJ considers all

5  impairments—regardless of severity—in the subsequent steps, an ALJ's failure to consider an

6  impairment "severe" is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). *See*

7  *also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), *Garcia v. Commissioner of Soc. Sec.*, 587

8  Fed.Appx. 367, 370 (9th Cir. 2014). Plaintiff prevailed at Step Two. AR 22. Further, the ALJ

9  ALJ actually considered Plaintiff's depression and macular degeneration in the remaining steps

10  of the sequential evaluation. For instance, to account for Plaintiff's depression, the ALJ limited

11  Plaintiff to simple tasks which require little to no judgment. AR 23. Also, the ALJ thoroughly

12  discussed the medical records pertaining to Plaintiff's macular degeneration when assessing

13  Plaintiff's RFC, noted two acceptable medical sources opined Plaintiff was malingering on

14  visual field testing, and otherwise incorporated the remaining credible limitation caused by

15  Plaintiff's macular degeneration—a restriction to avoid fine binocular tasks—into the

16  hypotheticals he presented to the vocational expert at Steps Four and Five of the sequential

17  evaluation. AR 24-37, 93-94. Because the ALJ accounted for Plaintiff's depression and macular

18  degeneration at all steps of the sequential evaluation, Plaintiff has failed to demonstrate how any

19  alleged error at Step Two was harmful.

20  II.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

21  **A. Standard**

22  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

23  opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

24

1  821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

2  *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

3  examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

4  set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

5  *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ

6  can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

7  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

8  F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

9  explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

10 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant

11 probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

12 (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

13 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

14 disregarding [such] evidence." *Flores*, 49 F.3d at 571.

15 **B.  Application of Standard**

16 1. *Mark Heilbrunn, M.D.*

17 Dr. Heilbrunn examined Plaintiff on February 20, 2014. AR 470. During his examination,

18 Dr. Heilbrunn noted Plaintiff's performance on a Snellen eye exam was 20/200 bilaterally with

19 corrective lenses, and 20/400 bilaterally without corrective lenses. AR 460. Dr. Heilbrunn

20 documented posterior kyphosis, decreased range of motion, and occasional crepitus in Plaintiff's

21 neck. AR 460. Dr. Heilbrunn also documented lumbar midline paraspinous tenderness, positive

22 lordosis, and positive straight leg raise tests from both sedentary and supine positions, as well as

23 reduced range of motion in Plaintiff's back, neck, and hips. AR 461-62.

24

1    Based upon his examination, Dr. Heilbrunn completed two functional assessments. AR

2 463-64; 465-70. In his narrative functional assessment, Dr. Heilbrunn opined, due to Plaintiff's

3 markedly decreased visual acuity, she would not be able to: avoid hazards in the workplace, read

4 very small print; adequately view a computer screen; or determine the differences in size and

5 shape of small objects without difficulty. AR 463. As for Plaintiff's physical limitations, Dr.

6 Heilbrunn opined Plaintiff could not sit for more than 30 minutes uninterrupted; could sit for no

7 more than four to five hours in an eight-hour workday; could not stand or walk for more than 15

8 minutes uninterrupted; could not stand or walk for more than four hours in an eight-hour

9 workday; could not lift or carry more than 10 pounds for more than an occasional basis; and

10 would be unable to reach overhead on a more than occasional basis. AR 463-64.

11    Similarly, Dr. Heilbrunn completed a check-the-box medical source statement, wherein

12 he described Plaintiff has having the following limitations: Plaintiff could lift and carry up to 10

13 pounds on a continuous basis, but could not lift or carry any heavier weights whatsoever;

14 Plaintiff could not sit for more than 30 minutes at one time, and could not sit for more than four

15 hours in an eight-hour workday; Plaintiff could not stand or walk for more than 15 and 10

16 minutes at one time, respectively, and could not stand or walk for more than one to two hours in

17 an eight-hour workday. AR 466-67. Dr. Heilbrunn also assessed limitations in Plaintiff's ability

18 to climb ladders, stairs, scaffolds, balance, stoop, kneel, crouch, crawl, reach and finger objects.

19 AR 467-68.

20    The ALJ gave Dr. Heilbrunn's opinion as to Plaintiff's visual impairments no weight, as

21 they were based "upon an exaggerated presentation of difficulty navigating through his office not

22 seen anywhere else in the record and not consistent with objective findings on her eye

23

24

examinations or retinal scans." AR 34. The ALJ also gave less than full weight to the remainder

of Dr. Heilbrunn's opinions for the following reason:

> The undersigned notes that Dr. Heilbrunn's opinion is generally consistent with his findings upon examination of the claimant. However, his findings are likely based upon exaggeration, as the claimant displayed limitations during her evaluation with Dr. Heilbrunn not seen elsewhere in the record. It is also impossible to determine how capable claimant actually is in light of the evidence of malingering.

AR 34. Plaintiff concedes the ALJ properly discounted Dr. Heilbrunn's opinions as to Plaintiff's

visual limitations, as Dr. Heilbrunn did not perform detailed vision testing. Dkt. 13, p. 8.

However, Plaintiff argues the ALJ's reasons for discounting the balance of Dr. Heilbrunn's

opined limitations were neither specific and legitimate reasons, nor were they supported by

substantial evidence. The Court agrees.

The ALJ cites the fact Plaintiff displayed limitations during the evaluation not seen

elsewhere in the record. However, the ALJ's reasoning here is conclusory, and unsupported by

citations to the record. In order to reject the opinion of a treating or examining physician, an ALJ

"must do more than offer his conclusions; he must set forth his own interpretations and explain

why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (*citing Embrey v.*

*Bowen,* 849 F.2d 418, 421-22 (9th Cir. 1988)). *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th

Cir. 2014). *See also, e.g.*, *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989) (finding

similar reasoning for rejecting a treating physician's opinion was "broad and vague, failing to

specify why the ALJ felt the treating physician's opinion was flawed"). To simply state Dr.

Heilbrunn documented findings not otherwise reflected in the record as a whole "does not

achieve the level of specificity our prior cases have required[.]" *Embrey*, 849 F.2d at 421-22.

Further, while an ALJ may draw inferences logically flowing from the record, an ALJ

may not speculate. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); SSR 86-8,

1  *available at* 1986 WL 68636, at \*8. Here, the ALJ posits it is "likely" Plaintiff was exaggerating

2  her symptoms during Dr. Heilbrunn's examination, and notes it is impossible for anyone to

3  determine Plaintiff's true functional capabilities in light of her malingering documented

4  elsewhere in the record. However, the ALJ does not connect these two concepts together. The

5  ALJ offers no explanation for how Dr. Heilbrunn's observations and independent clinical

6  findings are undermined by Plaintiff's history of malingering, other than mere conjecture that

7  because Plaintiff has malingered in other circumstances, she must be malingering here as well.

8  "[A]n ALJ may not reject an uncontradicted medical opinion based on sheer disbelief . . . . "

9  *Cotton v. Astrue*, 374 Fed.Appx. 769, 771 (9th Cir. 2010) (citing *Benecke v. Barnhart*, 379 F.3d

10  587, 594 (9th Cir. 2004)). *C.f. Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 11999-1200

11  (9th Cir.2008) (noting an ALJ does not provide clear and convincing reasons for rejecting an

12  examining physician's opinion "by questioning the credibility of the patient's complaints where

13  the doctor does not discredit those complaints and supports his ultimate opinion with his own

14  observations."). The ALJ's reasoning in this instance is speculative, and unsupported by

15  substantial evidence. [2]

16      Because the ALJ failed to articulate specific and legitimate reasons, supported by

17  substantial evidence, for discounting Dr. Heilbrunn's opinion, the ALJ erred. Further, Dr.

18

19  ─────────────

20      [2] This is not to say, on remand, the ALJ will be required to accept Dr. Heilbrunn's
   opinion. As discussed more thoroughly, below, the ALJ made affirmative findings of
   malingering based on other medical evidence, and properly discounted Plaintiff's subjective

21  symptom testimony. To the extent Dr. Heilbrunn's physical examination of Plaintiff relied upon
   Plaintiff's subjective reports, or on testing within Plaintiff's subjective control, the ALJ could

22  properly discount Dr. Heilbrunn's opinion on this basis. *See Bray v. Comm'r, Soc. Sec. Admin.*,
   554 F.3d 1219, 1228 (9th Cir. 2009); *Woodsum v. Astrue*, 2012 WL 1388346, at \*7 (W.D.

23  Wash., Mar. 29, 2012). *See also, e.g.*, *Calkins v. Astrue*, 384 Fed.Appx. 613, 615-16 (9th Cir.
   2010) (distinguishing *Ryan* and noting an ALJ must be able to "consider medical opinions in the

24  context of the record as a whole").

1  Heilbrunn opined to more restrictive physical limitations than those the ALJ included in the RFC

2  finding; thus, the ALJ's error was not "inconsequential to the ultimate nondisability

3  determination," but was instead harmful error requiring remand. *Molina*, 674 F.3d at 1117.

4        2. *Brenda Grant, M.D.*

5     Dr. Grant was Plaintiff's treating physician. AR 392, 405. On April 17, 2013, Dr. Grant

6  opined Plaintiff's low back pain and neurological deficits in her legs caused by lumbar

7  degeneration, coupled with vision loss, would cause several limitations in Plaintiff's functional

8  abilities. AR 486. Specifically, Dr. Grant opined Plaintiff: is unable to walk more than short

9  distances or lift and carry more than the lightest weights; cannot maintain one position for a

10 prolonged period of time. AR 486. Thus, Dr. Grant opined Plaintiff was unable to perform

11 physical labor, clerical work, or office work. AR 486.

12    The ALJ discounted Dr. Grant's opinion for two reasons:

13   [1] This opinion is not consistent with Dr. Grant's objective findings upon
  examination of the claimant. [2] Further, insofar as this opinion is based on the

14   claimant's reports of her limitations, and examination findings under the
  subjective control of the claimant, the undersigned notes that such findings can be

15   accorded no weight as the claimant has displayed objective evidence of
  malingering in the file as noted by Dr. Pratt and confirmed by Dr. Plotkin after an

16   independent impartial evaluation of the claimant's longitudinal treatment record.

17 AR 33. Plaintiff argues these were not specific and legitimate reasons, supported by substantial

18 evidence, for discounting Dr. Grant's opinion. The Court agrees. As to the ALJ's first reason, it

19 is again conclusory, without explanation or citation to supporting items in the record. *Reddick*,

20 157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). *See Garrison*, 759 F.3d at 1012. *See also*,

21 *e.g.*, *McAllister*, 888 F.2d at 602-03. As to the ALJ's second reason, it is insufficiently specific

22 and not supported by substantial evidence in the record. An ALJ may discount a physician's

23 opinion where the opinion is based to a large extent on a claimant's self-reports, and the ALJ has

24

1   properly discounted a claimant's subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d

2   1035, 1041 (9th Cir. 2008). However, when an opinion is not more heavily based on a patient's

3   self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."

4   *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ simply indicates he is

5   discounting Dr. Grant's opinion "to the extent" it relies on subjective testimony, however, the

6   ALJ points to nothing to indicate  Dr. Grant relied more heavily on Plaintiff's subjective reports

7   of pain than on the results of her physical examinations and imaging studies. AR 33. The ALJ's

8   failure to articulate his reasoning frustrates this Court's ability to perform meaningful judicial

9   review. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

10          Because the ALJ failed to articulate specific and legitimate reasons, supported by

11   substantial evidence, for discounting Dr. Grant's opinion, the ALJ erred.

12                          3. *Other Medical Opinions*

13          In addition to the opinions of Dr. Heilbrunn and Dr. Grant, Plaintiff also challenges the

14   ALJ's resolution of four other medical opinions in the record. However, the ALJ's evaluation of

15   these opinions was proper.

16          First, the ALJ properly discounted Joshua Pratt, O.D., Ph.D.'s opinion as to Plaintiff's

17   visual impairments by reference to Dr. Pratt's finding of malingering. AR 448.  *Tommasetti*, 533

18   F.3d at 1041 (ALJ may properly discount a physician's opinion where it is based on discounted

19   subjective reports). The ALJ also noted Dr. Pratt's opinion as to Plaintiff's visual acuity was

20   rendered without corrective lenses, despite the fact Dr. Pratt had documented 20/40 vision with

21   corrective lenses. AR 31, 420. The ALJ also properly discounted John Rodakowski, M.D.'s

22   opinion by reference to Plaintiff's failure to comply with treatment recommendations, such as a

23   referral to physical therapy and her prescription for hypothyroid medication. AR 32. *See*

24

1  *Romanelli v. Astrue*, 267 Fed.Appx. 722, 724 (9th Cir. 2008).  The ALJ offered specific and

2  legitimate reasons, supported by substantial evidence, for discounting these opinions.

3         Second, Plaintiff argues the ALJ gave too much weight to the opinions of consulting

4  physician, Michael D. Plotkin, M.D. However, the ALJ's evaluation of these opinions was not

5  error. An ALJ may give more weight to a non-examining, consulting medical advisor over an

6  examining physician if the ALJ provides "specific, *legitimate* reasons that are supported by

7  substantial evidence in the record." *Nguyen*, 100 F.3d at 1466. *See also Widmark v. Barnhart*,

8  454 F.3d 1063, 1066-67 (9th Cir. 2006) (holding the conflicting check-box opinion of a non-

9  examining physician meant the ALJ was only required to offer specific, legitimate reasons to

10  discount the opinion of an examining physician). Further, while a nonexamining physician's

11  opinion on its own is not considered substantial evidence, it may constitute substantial evidence

12  if it is *consistent* with other evidence in the record. *Lester*, 81 F.3d at 830-31; *Tonapetyan v.*

13  *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, Dr. Plotkin explained the basis of his opinion

14  and cited to evidence in the record—such as Dr. Pratt's finding of malingering on visual field

15  testing—to support his opinion. AR 52-58. Also, contrary to Plaintiff's argument, Dr. Plotkin did

16  explain how he considered the opinions of examining ophthalmologists in the record. AR 55-58

17  (noting Dr. Seifter documented peripheral vision loss but a normal central visual field, noted this

18  is inconsistent with macular degeneration, and suggested Dr. Seifter's recommended ERG/EOG

19  diagnostic testing is used to assess whether a claim of peripheral vision loss is "bogus").

20         Third, Plaintiff argues the ALJ purported to give great weight to examining physician Dr.

21  Seifter's opinion, but failed to recognize all of the opined limitations and assessed severe

22  impairments, including more limited vision than that found by the ALJ. AR 34, 471. However,

23  the ALJ acknowledged the only limitation Dr. Seifter opined to—an inability to perform fine

24

binocular tasks—and concluded it caused no more than a minimal limitation in Plaintiff's ability to work. AR 22. Further, the ALJ posed hypotheticals to the vocational expert concerning a limitation preventing Plaintiff from engaging in "fine binocular tasks", and the vocational expert opined to three jobs which did not require fine binocular tasks. AR 37, 93-94. Thus, Plaintiff has failed to demonstrate how the ALJ's evaluation of Dr. Seifter's opinion contained harmful error.

However, because the ALJ erred in evaluating the opinions of Dr. Heilbrunn and Dr. Grant, the ALJ should reevaluate the medical opinion evidence on remand.

III.   Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by Substantial Evidence, for Discounting Plaintiff's Subjective Symptom Testimony.

The ALJ has sole responsibility for resolving conflicting testimony and questions of credibility. *Sample*, 694 F.2d at 642 (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's testimony can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989).

An ALJ must offer "specific, cogent reasons" for discounting a claimant's testimony. *Reddick*, 157 F.3d at 722. Further, if an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. But, the clear and convincing reasons standard does not apply where there is affirmative evidence of malingering. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

ORDER ON PLAINTIFF'S COMPLAINT - 13

1    Here, the ALJ discounted Plaintiff's testimony due to affirmative evidence of

2    malingering in the record, as opined to and documented by Dr. Pratt and Dr. Plotkin. AR 25.

3    This was proper.   "[A]ffirmative evidence of malingering supports an adverse credibility

4    finding." *Merillat v. Comm'r, Soc. Sec. Admin.*, 350 Fed.Appx. 163, 166 (9th Cir. 2009) (citing

5    *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). *See Hamilton v.*

6    *Comm'r, Soc. Sec. Admin.*, 368 Fed.Appx. 724, 726 (9th Cir. 2010) (citing *Tonapetyan*, 242 F.3d

7    at 1148) Further, the ALJ also properly cited to a lack of objective medical evidence to support

8    the degree of Plaintiff's alleged limitations, as well as inconsistencies between Plaintiff's

9    testimony at the hearing and her reports made to physicians throughout the medical record. AR

10    29, 459. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. §

11    404.1529(c)(2)); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  These are specific,

12    cogent reasons for discounting Plaintiff's subjective symptom testimony.

13    However, an evaluation of a claimant's testimony also relies, in part, on an accurate

14    assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As discussed in

15    Section II, above, the ALJ erred in evaluating the opinion evidence from Plaintiff's treating and

16    examining physicians. Further, the Court notes at least one of the ALJ's proffered reasons for

17    discounting Plaintiff's testimony is simply inaccurate. Specifically, the ALJ notes Plaintiff has

18    inconsistently reported her alcohol use to treating providers. AR 35. But, the ALJ misrepresents

19    the findings on Plaintiff's alcohol use made by Dr. Rodakowski. AR 35. Plaintiff did not report

20    she consumed alcohol on a daily basis, nor did she admit to being annoyed at questions

21    concerning her alcohol use. AR 364.[3] Finally, the Court notes the Social Security Administration

22

23    _____

24    [3] The Court is mindful this error may have arisen from the somewhat inartful phrasing
     contained in Dr. Rodakowski's treatment notes. Dr. Rodakowski noted Plaintiff's response to the

1   recently adopted SSR 16-3p, which requires an ALJ to refrain from "assess[ing] an individual's

2   overall character or truthfulness in the manner typically used during an adversarial court

3   litigation." SSR 16-3p, *available at* 2011 WL 1119029, *10.[4] As this case must be remanded for

4   further proceedings in any event, the ALJ should also reevaluate Plaintiff's subjective testimony

5   anew on remand, especially in light of the changes articulated in SSR 16-3p.

6       IV.    Whether the Case Should be Remanded for an Award of Benefits or Further
               Proceedings.

7

8           Plaintiff argues the case should be reversed and remanded for the award of benefits,

    rather than for further proceedings.

9

10          Generally, when the Social Security Administration does not determine a claimant's

11  application properly, "the proper course, except in rare circumstances, is to remand to the agency

12  for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

13  2004) (citations omitted). However, the Ninth Circuit has established a "test for determining

14  when [improperly rejected] evidence should be credited and an immediate award of benefits

15  directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen*, 80 F.3d at

16  _____

17  CAGE questionnaire was as follows: "DENIES having tried to cut down on alcohol
    consumption, being annoyed when questioned about alcohol use, feeling guilty about drinking
18  and consuming an 'eye opener' drink in the morning." The CAGE questionnaire is a four-part
    questionnaire where positive responses indicate clinically significant alcohol abuse behaviors.
19  *See* CAGE Questionnaire, *National Institute on Alcohol Abuse and Alcoholism*,
    https://pubs.niaaa.nih.gov/publications/inscage.htm (last visited December 14, 2016).
20          [4] The changes to Social Security Administration practice articulated in SSR 16-3p could
    not apply to the ALJ decision at issue before this court. 42 U.S.C. § 405 does not contain any
21  express authorization from Congress allowing the Commissioner to engage in retroactive
    rulemaking. *See Bowen v. Georgetown Univ. Hosp*, 488 U.S. 204, 214-215 & n.3 (1988). *See*
22  *also Portlock v. Barnhart*, 208 F.Supp.2d 451, 456 (D. Del. June 24, 2002) (holding the
    application of a recently-revised SSR to an applicant's pending claim on appeal would constitute
23  an impermissible retroactive application of an agency rule) (*citing Bowen*, 488 U.S. at 224).
    Thus, despite Plaintiff's argument to the contrary, the Commissioner's adoption of SSR 16-3p is
24  *not* a separate and independent basis to find the ALJ erred by discounting Plaintiff's testimony.

1292. This test, often referred to as the "credit-as-true" rule, allows a court to direct an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (*quoting Smolen,* 80 F.3d at 1292). *See also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Further, even if the ALJ has made the three errors under *Harman* and *Smolen*, such errors are relevant only to the extent they impact the underlying question of Plaintiff's disability. *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021 (*citing Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2004)).

Here, outstanding issues must be resolved. Dr. Heilbrunn and Dr. Grant's opinions are contradicted by less restrictive opinions in the record. Further, the record contains evidence of malingering by Plaintiff. Thus, there is insufficient evidence in the record to establish Plaintiff should be found disabled as a matter of law, and the case should be remanded for additional proceedings. *See Harman*, 211 F.3d at 1180. *See also Treichler*, 775 F.3d at 1104-06.

## CONCLUSION

Based on the foregoing reasons, the Court finds the ALJ committed harmful error by failing to properly evaluate Dr. Heilbrunn and Dr. Grant's opinions. Therefore, the Court orders

this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinion evidence, re-evaluate Plaintiff's subjective symptom testimony, reevaluate Plaintiff's residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this 16th day of December, 2016.

David W. Christel
United States Magistrate Judge